# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Michael W. S.,[1]                                    Case No. 23-cv-2678 (JFD)

        Plaintiff,

v.                                                                      **ORDER**

Leland Dudek, Acting Commissioner of
Social Security,[2]

        Defendant.

Pursuant to 42 U.S.C. § 405(g), Plaintiff Michael W. S. seeks judicial review of a final decision by the Defendant Acting Commissioner of Social Security, which denied Plaintiff's application for disability insurance benefits ("DIB"). The matter is now before the Court on Plaintiff's Brief (Dkt. No. 13), Defendant's Brief (Dkt. No. 18), and Plaintiff's Reply (Dkt. No. 19).

Plaintiff argues that the final decision should be reversed because the administrative law judge ("ALJ") who authored the decision did not properly account for the total limiting effects of Plaintiff's migraine headaches. The Commissioner asks the Court to affirm the final decision. As set forth fully below, the Court finds that the ALJ's decision is supported

---

[1] The District of Minnesota has adopted a policy of using only the first name and last initial of nongovernmental parties in Social Security cases.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Leland Dudek is automatically substituted as Defendant.

1

by substantial evidence on the record as a whole and the ALJ committed no legal error. Accordingly, the Court affirms the Commissioner's final decision.

## I.   Background

Plaintiff filed for DIB on March 19, 2021, alleging disability since February 9, 2019. (*See* Soc. Sec. Admin. R. (hereinafter "R.") 15.)[3] Plaintiff's alleged medical conditions were chronic migraines, headaches, arthritis, chronic pain, hernia, learning disability, depression, fatigue, sleep issues, intestinal issues, stomach issues, and nausea. (*See* R. 262.)

### A.   Relevant Facts[4]

Plaintiff sought treatment for migraine headaches from Dr. Brian A. Capps in July 2019. (R. 423.) Plaintiff reported an exacerbation of headache symptoms after a dental procedure in May 2019. (R. 423.) Topamax and a migraine nasal spray reportedly provided only temporary relief, and Plaintiff was supplementing his prescription medication with Excedrin. (R. 423.) Dr. Capps thought the increased headaches could be caused by overuse of Excedrin, which contained caffeine and is "well known to be a factor in medication overuse headaches," or by sleep apnea, with which Plaintiff had previously been diagnosed. (R. 424.) Dr. Capps told Plaintiff to completely stop taking Excedrin and to start using his Continuous Positive Airway Pressure ("CPAP") machine. (R. 424–25.)

---

[3] The Social Security administrative record is filed at Dkt. No. 11. The record is consecutively paginated on the lower right corner of each page, and the Court cites to those page numbers.

[4] The Court limits its summary of relevant facts to the issues presented for judicial review.

Dr. Douglas Kaplan, a neurologist, began administering Botox injections for chronic migraine prevention shortly after Plaintiff reported the increased headaches to Dr. Capps. In October 2021, Plaintiff reported a "greater than 75% reduction in severe headache days." (R. 562.) Plaintiff was also self-administering monthly Emgality injections, which Dr. Kaplan encouraged him to continue. (R. 562.) In January 2020, Plaintiff reported a greater than 66% reduction in "severe headache days." (R. 540.) In October 2020, Plaintiff reported a 50% reduction in headache frequency. (R. 515.) A CT scan of Plaintiff's brain and head in November 2020 was normal, with "[n]o findings to explain headaches." (R. 383.) Dr. Kaplan administered Botox injections again in February 2021 and recorded a more than 50% reduction in headache frequency. (R. 494.)

In January 2021, Plaintiff told provider Toni M. Roberts, PA-C, that his headaches were "doing really well" and he was having only one migraine a month. (R. 396–97.) He reported that Emgality and Botox injections were "really helpful." (R. 397.) The physical examination was normal. (R. 399.) Six months later, however, Plaintiff said his headaches had worsened and were occurring 12 to 16 times a month. (R. 676.) He reported "taking a lot of acetaminophen," which Ms. Roberts thought could be contributing to his headaches, and she encouraged Plaintiff to stop taking over-the-counter medications. (R. 680.)

Plaintiff told Dr. Kaplan in September 2021 that his severe headache days had decreased from 20 to 10 per month. (R. 853.) That same month, Plaintiff told his mental health provider, Patti Jenkins, that his headaches caused nausea, blurry vision, and vomiting. (R. 857.) Plaintiff told Ms. Roberts in January 2022 that his headaches had been "pretty awful" recently, with one headache lasting three or four days. (R. 881–82.) A

3

corresponding physical exam was unremarkable, but Ms. Roberts noted that Plaintiff was confused about his medications. (R. 885.)

After several appointments with a chiropractor, Dr. David Fisher, Plaintiff reported an improvement with headaches in March 2022. (R. 815.) In July 2022, however, Plaintiff went to the emergency room for treatment of a "typical migraine." After Toradol and other medications were administered intravenously, Plaintiff noted "significant improvement" and was discharged. (R. 914.)

On August 12, 2022, Ms. Roberts wrote a "To whom it may concern" letter stating, in full, that Plaintiff "has chronic migraines and chronic low back pain that negatively affect his ability to work. I do not feel that he would be able to hold a regular job due to the frequency and severity of these conditions." (R. 922.) On August 19, 2022, Dr. Fisher wrote that Plaintiff's back pain, neck pain, and migraines "can completely incapacitate him due to pain, vomiting, visual changes[,] and dizziness for varying periods of time." (R. 923.) Each episode, according to Dr. Fisher's letter, could last several weeks to a month, and occur several times a year. (R. 923.)

### B.    Procedural History

Plaintiff's DIB application was denied at both the initial and reconsideration stages of review. He requested an administrative hearing before an ALJ, which was held on August 8, 2022. (*See* R. 42.)

Plaintiff offered the following testimony at the hearing. Plaintiff has had migraines since he was two years old. (R. 62.) He stopped working in 2019 due to a migraine that was caused by sitting too long in a dentist's chair with his mouth open. (R. 56.) The

4

migraine recurred every few days for more than a year. (R. 57.) Medication, chiropractic treatment, and acupuncture provided some relief and reduced the frequency of the migraines down to about 14 per month. (R. 56–57.) Injections of Botox and Emgality provided "a little bit" of improvement. (R. 58.) The severity of Plaintiff's migraines before and after the dental visit were "about the same." (R. 71.) Plaintiff sought emergency-room treatment in July 2022 for a migraine that he thought had been caused by too much sunlight and an altercation with his roommate. (R. 72.)

The ALJ issued a written decision on September 8, 2022, finding that Plaintiff was not disabled. (R. 12–36.) The ALJ followed the familiar five-step sequential analysis described in 20 C.F.R. § 404.1520 in making that determination.[5] At each step, the ALJ considered whether Plaintiff was disabled based on the criteria of that step. If he was not, the ALJ proceeded to the next step. *See* 20 C.F.R. § 404.1520(a)(4).

The ALJ determined at the first step that Plaintiff had not engaged in substantial gainful activity since February 9, 2019. (R. 18.) At the second step, the ALJ found Plaintiff had the following severe impairments: migraine headaches, chronic obstructive pulmonary disease, mild neurocognitive disorder, depressive disorder, and anxiety disorder. (R. 18.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R.

---

[5] The five steps are "(1) whether claimant is engaged in substantial gainful activity, (2) whether claimant has a severe impairment, (3) whether the impairment meets or equals the severity of a listed impairment, (4) whether claimant has the residual functional capacity to perform past relevant work activity, and (5) if claimant is unable to do past work, whether claimant can perform other work." *Delph v. Astrue*, 538 F.3d 940, 946 (8th Cir. 2008) (citing *Smith v. Shalala*, 987 F.2d 1371, 1373 (8th Cir. 1993)).

Part 404, Subpart P, Appendix I. (R. 19.) The ALJ specifically considered Plaintiff's headache disorder under Social Security Ruling ("SSR") 19-4p and Listing 11.02. (R. 19.) The ALJ observed in relevant part that Plaintiff had been treated for migraine headaches, but "there is no detailed description from an acceptable medical source of a typical headache event in the file." (R. 19.) Moreover, the ALJ saw "no consistent evidence regarding the frequency of the claimant's headache events, nor a description of limitations in functioning that may be associated with the claimant's primary headache disorder or effects of its treatment." (R. 19.)

Between steps three and four, the ALJ assessed Plaintiff's residual functional capacity ("RFC"), which is a measure of "the most [Plaintiff] can still do despite [Plaintiff's] limitations." 20 C.F.R. § 404.1545(a)(1). As part of this assessment, the ALJ considered Plaintiff's symptoms. *See* 20 C.F.R. § 404.1529(d)(4). The ALJ acknowledged that Plaintiff's "primary complaint regarding work limitations is headaches." (R. 25.) The ALJ specifically considered Plaintiff's statements concerning the frequency and intensity of his headaches and his alleged inability to work due to migraines, ultimately determining that Plaintiff's statements were not consistent with the medical and other evidence of record. (R. 24.)

Beginning with the medical evidence, the ALJ observed that imaging of Plaintiff's head and brain was "unremarkable," and although Plaintiff "had ongoing treatment for headaches throughout the relevant time period," the ALJ found that Plaintiff "consistently report[ed] improvement in headaches and migraines to his treating providers throughout the relevant time period, with conservative treatment modalities applied." (R. 25.)

6

Specifically with respect to treatment with Dr. Capps, the ALJ noted Plaintiff's report that his headaches had been exacerbated by a dental procedure but that migraine nasal spray and Excedrin provided temporary relief. (R. 25.) The ALJ summarized Dr. Capps' records concerning Plaintiff's use of Excedrin, Plaintiff's discontinued use of his CPAP machine, and Plaintiff's reported symptoms of nausea, vomiting, blurry vision, photophobia, phonophobia, and dizziness. (R. 25.) The ALJ also noted that Plaintiff had asked Dr. Capps to complete Family Medical Leave Act ("FMLA") paperwork but that no FMLA paperwork was included in the record before the ALJ. (R. 25.) The ALJ recounted Dr. Capps' unremarkable examinations and conservative treatment modalities. (R. 25–26.)

The ALJ also summarized records from Dr. Kaplan, noting that Dr. Kaplan's treatment of Plaintiff with Botox injections and Topamax was relatively successful, and Dr. Kaplan's clinical findings were normal. (R. 26.) In particular, Plaintiff reported a "significant reduction in severe headache episodes" to Dr. Kaplan and denied worsening headache symptoms after discontinuing Topamax. (R. 26.) Two years into treatment with Dr. Kaplan, Plaintiff reported a greater than 50% reduction in headache frequency, sometimes up to a 75% reduction. (R. 26, 27.)

Other records discussed by the ALJ in evaluating Plaintiff's symptoms and assessing his RFC include Dr. Fisher's progress note in late 2019 documenting improved headaches, Plaintiff's report to a consultative examiner in 2020 that Botox helped with headaches, and Plaintiff's reports to a provider in January 2021 of "doing really well in terms of headaches" and having only one migraine a month. (R. 26.) The ALJ also considered Plaintiff's reports of worsening headaches when he discontinued Emgality due

to insurance coverage, Plaintiff's report to his mental health provider of daily tension headaches and "debilitating migraines" 10 to 15 times a month, and Plaintiff's emergency-room treatment for a migraine in July 2022. (R. 27–29.)

The ALJ concluded that Plaintiff's treatment and course of care were consistent with an improvement in the severity and frequency of his migraines. (R. 29.) The ALJ also pointed out that Plaintiff had worked before the alleged onset date, even though headaches and migraines were documented in the record at that time: "the claimant's treatment records and testimony indicate[] he has had headaches and migraines from prior to the alleged onset date, with little change in frequency or severity, though the claimant was working with his headaches and migraines prior to the alleged onset date." (R. 29.) The ALJ observed that Plaintiff had reported only one migraine per month in 2021 and had consistently reported more than 50% improvement to Dr. Kaplan, his neurologist, with Botox injections. (R. 29.) The ALJ concluded that the "widely varying estimates of frequency of headaches throughout the relevant time period raise questions about the accuracy and reliability of the claimant's testimony about the frequency and severity of headaches." (R. 29.)

Ultimately, the ALJ determined that Plaintiff had the RFC

to perform light work as defined in 20 [C.F.R. §] 404.1567(b) except: occasional ramp and stair climbing; occasional climbing of ladders, ropes and scaffolds; frequent balancing, stooping, kneeling, crouching, crawling; needs to avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation, and also to hazards like the operation of dangerous moving machinery and unprotected heights; could understand, remember and carry out simple, routine, repetitive tasks adequately to meet simple production quotas of a simple, routine, repetitive task work setting; could tolerate occasional brief interactions with the general public and coworkers; could

> tolerate ordinary levels of supervision found in a customary work setting; could tolerate the stresses and pressures of a simple routine and repetitive task work setting.

(R. 23.) Specifically to accommodate Plaintiff's migraine headaches and complaints of pain, the ALJ limited Plaintiff to light work, with additional postural, climbing, and environmental limitations. (R. 24.)

Proceeding to step four in the sequential evaluation, the ALJ considered whether Plaintiff could perform his past relevant work as a cleaner, plasterer, or construction worker, given the RFC assessed. (R. 35.) The ALJ determined that Plaintiff could not. (R. 35.) Thus, the ALJ proceeded to step five to consider whether jobs existed in the national economy that Plaintiff could perform, based on his age, education, work experience, and RFC. (R. 36.) Relying on hearing testimony from a vocational expert, the ALJ concluded that Plaintiff could work as a labeler, garment bagger, or inserter. (R. 36.) Therefore, Plaintiff was not disabled as defined by the Social Security Act. (R. 36.)

The Appeals Council denied Plaintiff's request for review of the ALJ's decision. (R. 1.) This made the ALJ's decision the final decision of the Commissioner for the purpose of judicial review.

## II.    Legal Standards

Judicial review of the Commissioner's denial of benefits is limited to determining whether substantial evidence on the record as a whole supports the decision, 42 U.S.C. § 405(g), or whether the ALJ's decision resulted from an error of law, *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1089 (8th Cir. 2018). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the

Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). The Court must examine "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Id.* (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)). The Court may not reverse the ALJ's decision simply because substantial evidence would support a different outcome or if the Court would have decided the case differently. *Id.* (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). In other words, if it is possible to reach two inconsistent positions from the evidence and one of those positions is that of the Commissioner, the Court must affirm the decision. *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

A claimant has the burden to prove disability. *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995). To meet the definition of disability, the claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

## III.    Discussion

### A.    The ALJ Did Not Err in Assessing Plaintiff's Symptoms and "Self-Described Limitations."

Plaintiff argues that the ALJ erred in evaluating Plaintiff's "self-described limitations"—in other words, subjective symptoms—in assessing Plaintiff's RFC. (Pl.'s Br. at 4.) The ALJ considered Plaintiff's testimony and statements about his symptoms and

found that while his impairments could be expected to cause such symptoms, Plaintiff's claims about the intensity, persistence, and limiting effects of his symptoms were not consistent with the record. *See* 20 C.F.R. § 404.1529(a).

In evaluating the intensity, persistence, and limiting effects of a claimant's symptoms, an ALJ considers the objective medical evidence and other relevant factors such as:

1. Daily activities;

2. The location, duration, frequency, and intensity of pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p, 2016 WL 1119029, at *7 (S.S.A. Mar. 16, 2016); *see* 20 C.F.R. § 404.1529(c). An ALJ need not discuss every factor, but only the factors relevant to assessing the persistence, intensity, and limiting effects of symptoms. SSR 16-3p, 2016 WL 1119029, at *7.

Here, the ALJ determined that Plaintiff's statements about the intensity, persistence, and limiting effects of his headaches were not consistent with the objective medical evidence. In the written decision, the ALJ meticulously summarized the medical records

relevant to Plaintiff's headaches. Of particular relevance were that images of Plaintiff's brain and head were normal; Plaintiff made numerous reports to his providers of improved headaches; Plaintiff's providers prescribed or directed relatively conservative treatment modalities; Plaintiff's reports about the frequency and severity of headaches to different providers were inconsistent; Botox and Emgality were generally effective; physical examination findings were generally unremarkable or normal; Plaintiff occasionally did not comply with his providers' orders (i.e., discontinuing over-the-counter medication and using a CPAP machine); no medical source described in detail a "typical" headache event; Plaintiff was able to work before the alleged onset date while experiencing similar headaches and migraines; and no provider imposed or recommended headache-related functional limitations. (R. 19, 25–29.)[6] Despite this evidence, the ALJ still accounted for some intensity, persistence, and limiting effects of headaches and reduced Plaintiff's capacity to do work-related activities accordingly. Specifically, the ALJ limited Plaintiff to "light work, with additional postural and climbing limitations, as well as environmental restrictions, to accommodate migraine headaches and complaints of pain." (R. 24.)

The Court finds that the ALJ did not err in evaluating Plaintiff's symptoms or self-described limitations. Substantial evidence supports the ALJ's conclusion that the claimed

---

[6] The Court includes the ALJ's step-three discussion of medical evidence because an ALJ's decision should be read as a whole, and the ALJ need not repeat findings and conclusions made at one step in each subsequent step. *See Reiche v. Kijakazi*, No. 4:22-CV-427 RHH, 2023 WL 3686362, at *3 (E.D. Mo. May 26, 2023); *see also Nar B. G. v. O'Malley*, No. 23-CV-2076 (JWB/JFD), 2024 WL 4132424, at *2 (D. Minn. Sept. 10, 2024) ("The discussion of the treatment and examination notes in the medical record reflects the ALJ's consideration of supportability and consistency, even though that discussion appears in a different section of the ALJ's findings.").

intensity, persistence, and limiting effects of Plaintiff's headaches were inconsistent with the objective medical evidence and other relevant evidence of record.

**B.    The ALJ Complied with SSR 19-4p in Evaluating Plaintiff's Headaches.**

Plaintiff suggests that the ALJ did not properly analyze his headaches for consistency with the record, citing SSR 19-4p. (Pl.'s Br. at 7.) SSR 19-4p governs how ALJs must evaluate headache disorders. Relevant here, when assessing a claimant's RFC, the ALJ must "consider the extent to which the person's impairment-related symptoms are consistent with the evidence in the record. . . . Consistency and supportability between reported symptoms and objective medical evidence is key in assessing the RFC." SSR 19-4p, 2019 WL 4169635, at *8 (S.S.A. Aug. 26, 2019). As described in detail in Part III.A above, the ALJ properly examined the consistency and supportability between Plaintiff's reported headache symptoms and the objective medical and other evidence. Correspondingly, the Court finds that the ALJ complied with SSR 19-4p in evaluating Plaintiff's headaches.

**C.    Substantial Evidence Supports the Limitations Imposed by the ALJ.**

Plaintiff argues that the evidence establishes "far greater" limitations than the ALJ included in the RFC. (Pl.'s Br. at 12.) But Plaintiff identifies no specific limitations opined or recommended by any of his providers, and indeed the ALJ observed in the written decision that no source imposed functional restrictions attributable to headaches. To the extent Plaintiff relies on his subjective statements to support greater limitations, the Court's previous discussion forecloses that route.

Similarly, Plaintiff argues—without support—that "his symptoms inevitably take him off-task" and would require him to be absent from work more than two times per month. (Pl.'s Br. at 12.) Other than the generic and conclusory letters written by Dr. Fisher and Ms. Roberts, there is no objective evidence to potentially support Plaintiff's proffered limitations. The ALJ deemed Dr. Fisher's and Ms. Roberts' letters neither persuasive nor valuable, because they were conclusory, lacked specific functional restrictions, and opined on an issue reserved to the Commissioner. (R. 34.) Plaintiff does not challenge these determinations, but even if he had, the ALJ did not err.

Finally, the Court finds unavailing Plaintiff's argument that the ALJ placed too much significance on Plaintiff's prior work history and on Plaintiff's varying estimates of the frequency of headaches. (Pl.'s Br. at 14–15.) This argument essentially asks the Court to reweigh the evidence, which the Court may not do. *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994). It is clear from the ALJ's summarization of the evidence that he was aware of the inconsistencies in the record concerning Plaintiff's headaches and other symptoms. It was the ALJ's duty to resolve those conflicts, *Richardson v. Perales*, 402 U.S. 389, 399 (1971), and he did not err in doing so.

Accordingly, based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1. The relief requested in Plaintiff's Brief (Dkt. No. 13) is **DENIED**;

2. The relief requested in Defendant's Brief (Dkt. No. 18) is **GRANTED**; and

14

3.  The Commissioner's final decision is affirmed.


**LET JUDGMENT BE ENTERED ACCORDINGLY**.


Date:  February 20, 2025                    _s/  John F. Docherty_
                                           JOHN F. DOCHERTY
                                           United States Magistrate Judge